Judge Robertson
deliveied the opinion of the Court.
Robert Saunders, being the patentee of a tract of land in this state, sold and conveyed it to Hathway, in 1799, Hathway took possession, shortly after his purchase, but after an occupancy of several years, a judgment in ejectment, was rendered against him, in 1819, for partof the land, in favour of French,-who held an adverse claim to it. In the sameyear (Saunders being dead) his heirs and admin-trators, paid Hathway, the original consideration and interest for the land, for which French had obtained judgment. In 1820, Hathway surrendered the possession to Groves, to whom French had sold the land.
In 1822, Saunders’s heirs, filed a bill in chancery against Hathway, charging, that he bad suffered judgment, to be obtained against him improperly, asserting that he could have prevented the judgment, by relying on a possession, under the patent of R. Saunders continued for more than twenty years, and praying among other things, that he should be compelled to re-convey to them, the legal title to the lost land, which he had acquired from their ancestor. He answered and resisted the decree, for a reconveyance. But in March, 1825, the court rendered a decree, for a recovery, and with the consent of the parties. Accordingly, on the 19th of March, 1825, a deed was *407 made by Hathway, to Saunders’s heirs, re-conveying to them, the title to the land.
Shortly after the execution of this deed, the heirs brought this suit, (ejectment) against Groves, to recover the possession.
The foregoing facts, having been proved on the trial, the court, on the motion of Groves, instructed the jury, “that if they should believe from the testimony, that Groves, at the date of the deed, from Hathway, to the plaintiffs, was in possession of the land, under a title, adverse to that of Saunders’s, they must find a verdict for the defendant.”
Whereupon, the jury returned a verdict of not guilty, for the defendant, and the court gave judgment upon it, against the plaintiffs.
To reverse this judgment, this writ of error, is prosecuted, with a supersedeas.
The only question to be considered, as will have been seen, is, whether the Champerty, act of 1824, operates on the deed,in this case, and renders it void?
We cannot-concur with the circuit court, in its opinion. As it seems to us, neither the letter, nor spirit of the act, of 1824, applies to this deed. The act, is necessarily prospective* It denounces sales of land, whilst it shall be, in the adverse possession of any other, than the seller. This was not a sale. If it were, the consideration passed, in 1819, and therefore, the act could not be construed, to interdict the execution of the contract,' by conveyance. Saunders’s heirs, were entitled to a re-conveyance, whenever they refunded the purchase money, and interest. It was the duty of Hathway, then to reinstate them, as far as he could by restoring to them their title. They might have had an available and superior equity to the land, although French, may have held the paramount legal right, or they may have been entitled to the possession by an occupancy of twenty years: by proving which they might be restored to the land. For the judgment against Hathway, was rendered before it was provided by the act of 1825, that one judgment in ejectment, should be a bar to another;.and besides, if it had not been, Saunders’s *408 heirs, would not be barred by any thing, in that act, because their vendee, who was evicted, was in possession, when the judgment was obtained against him, which would bring them, within an exception, to the operation of the act.
Therefore, in our opinion, the deed in this case, does not come within, even the letter of the Champerty act. Suppose A, having bought from B, in 1815, a tract of land, and paid for it, took possession, and enjoyed it, until 1824, when he was disseised by a trespass, or under pretext of adverser title. The dissei-ser remains in possession, until 1826. And in the mean time, but after the Champerty act had gone into operation, B had made a deed to A, would this deed be void? Is this a sale,in 1826, of land held adversely? Surely not.
Nor does the deed from Hathway cofne within the spirit of the act. The object of the act was td prevent “Champerty.” It was not to prevent the ful-filment of pre-existing, bona Jide contracts, nor the enforcement of equitable objections. In the case of May’s heirs vs. Slaughter, III. Marshall, 569, it is decided that a devisee is not within the operation of the Champerty act, because a devisee of land'is not within the spirit of the act, nor is the mischief intended to be remedied by its sanctions. The act was framed to frustrate the mischievous schemes of the litigious and speculating, by proscribing contracts for purchasing pretended claims to land. It operates on the motives of men. It is addressed to those who are about to buy or sell, for the mere purpose of gain. The parties to this deed, have neither bought nor sold. They have made no contract whatsoever. The one has only restored to the other, that which he was under a clear moral and equitable obligation to return to him, before the Champerty act had existence, and for not getting which, years before the date of the act, those who are now to lose by it if it apply to them, are chargeable with no fault, positive or negative. They brought their suit for the conveyance, as soon as it could well be instituted. They were delayed by Hathway. At last they succeeded and got a deed, but not until March, 1825. To apply *409 Ike doctrine or the penalties of Champerty to such a case, would pervert its aim from the prevention of mischief, to the punishment of just and acts, which all laws should protect and encourage.
Deed made “^j\rclteGrec although land in adv.erse PosseS’ ^er °isnot" within chamPerty a°h
Triplett, for plaintiff; Mills and Brown, for defendant.
The decree would take the case out of the statute* if otherwise the conveyance could be affected by it. Certainly a deed which a party is cofripelled, by the decree of a competent court, to make, Cannot be within the reason of a Champerty law, or the mischief intended to be removed by it. If it could be shown that the suit in chancery was a device to evade the act of 1824, then, no doubt, the decree could nót avert its denunciations. But the decree being, as in this case, by consent, could not, without some other and better evidence of fraud arid collusion, render a deed, made in obedience to its mandate, void. It is evident in this case, that there could have been no combination, in fraud of the law, because the suit was brought in 1822, and for any other thing, rather thaii a- purpose, condemned by the spirit of the act of ’24. And moreover, when the heirs of Saunders got the deed, they had obtained no more than they had been justly entitled to for years before; and Hathway could not have prevented a decree.
Wherefore, believing that the jury were misin-structed,the judgment of the circuit courtis reversed and the cause remanded, with instructions to award a new trial.